UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x

JASON DISISTO,

                             Plaintiff,

        -v-

THE CITY OF NEW YORK, New York City Police
Department ("NYPD") Officer ("P.O.") JONATHAN
MUNOZ (Shield No. 20918), P.O. EDWIN FLOREZ
(Shield No. 22262), and P.O. DANIEL CROSS, (Shield
No. 2635), in their individual capacities,

                         Defendants.
--------------------------------------------------------------------x

**AMENDED COMPLAINT
and DEMAND FOR A
JURY TRIAL**

Index No.
15-CV-3296 (GHW)

       Plaintiff JASON DISISTO, through his attorney David B. Rankin and Gillian Cassell-

Stiga of Rankin & Taylor, PLLC, as and for his amended complaint, does hereby state and

allege:


### PRELIMINARY STATEMENT

1.  This is a civil rights action brought to vindicate plaintiff's rights under the First, Fourth, and

    Fourteenth Amendments of the Constitution of the United States, through the Civil Rights

    Act of 1871, *as amended*, codified as 42 U.S.C. § 1983, along with pendent claims under the

    laws of the State of New York.

2.  Plaintiff JASON DISISTO was arrested in retaliation for his attempting to film officers of the

    NEW YORK CITY POLICE DEPARTMENT ("NYPD").   His rights were violated when

    officers unconstitutionally and without any legal basis arrested him for taking a cell phone

    video of an officer performing a search on a public sidewalk.

3.  Mr. DISISTO was engaged in legal and protected activity and was in no way interfering with the officers.  Nonetheless, in gross violation of Mr. DISISTO's constitutional rights, officers arrested Mr. DISISTO and brought charges against him.

4.  Thereafter, NYPD P.O. JONATHAN MUNOZ falsely swore out a written statement claiming Mr. DISISTO attempted to hit an officer.  The complete falsity of P.O. MUNOZ's statement was exposed by video surveillance footage of the incident.

5.  Mr. DISISTO seeks an award of compensatory damages, punitive damages, and attorneys' fees.

**JURISDICTION AND VENUE**

6.  This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4). This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the First, Fourth, and Fourteenth Amendments to the Constitution of the United States.

7.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because plaintiff's claims arose within the confines of the Southern District of New York.

8.  As authorized by Order of the New York State Supreme Court, New York County, dated July 28, 2015, and with the requirements of New York General Municipal Law § 50-e, Mr. DISISTO filed a timely Notice of Claim with the New York City Comptroller on or about August 13, 2015. Thus, this Court has supplemental jurisdiction over Mr. DISISTO's claims under New York law because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

9.  Mr. DISISTO's claims have not been adjusted by the New York City Comptroller's Office.

10. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

## PARTIES

11. Plaintiff JASON DISISTO ("DISISTO") was at all times relevant to this action a resident of the County of Westchester in the State of New York.

12. Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

13. NYPD Officer ("P.O.") JONATHAN MUNOZ ("MUNOZ") (Shield No. 20918), P.O. EDWIN FLOREZ ("FLOREZ") (Shield No. 22262), and P.O. DANIEL CROSS ("CROSS"), (Shield No. 2635)   (hereinafter "individual defendants") are and were at all times relevant herein, officers, employees and agents of the NYPD.

14. The individual defendants are being sued herein in their individual capacities.

15. At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of NYPD and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

16. The individual defendants' acts hereafter complained of were carried out intentionally, recklessly, with malice, and in gross disregard of plaintiff's rights.

17. At all relevant times, the individual defendants were engaged in joint ventures, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

## STATEMENT OF FACTS

18. Mr. DISISTO was falsely arrested by P.O. MUNOZ shortly after 1:00 a.m. on March 12, 2014 in front of 1455 Saint Nicholas Avenue in the County and State of New York.

19. Ms. DISISTO was standing outside of La Casa Del Mofongo, a restaurant, with several friends.

20. Mr. DISISTO observed P.O. MUNOZ and P.O. FLOREZ approach and saw P.O. MUNOZ illegally search the pockets of one of his friends.

21. Mr. DISISTO asked another friend for a cell phone so he could videotape the officers' conduct.

22. While standing a safe distance away from the individual defendants, Mr. DISISTO raised the cell phone in his hands so that he could videotape their conduct.

23. On information and belief, others in the area understood the act of raising a cell phone to record the officer's conduct as innately critical of that officer's conduct.

24. In an attempt to prevent Mr. DISISTO from recording the conduct and in response to Mr. DISISTO raising his hands to do the same, P.O. MUNOZ lunged toward Mr. DISISTO.

25. Due the unprovoked use of force by P.O. MUNOZ, Mr. DISISTO was prevented from exercising his First Amendment protected right to record the police.

26. An individual defendant threw the cell phone used by Mr. DISISTO out of the window of the police vehicle en route to the precinct.

4

27. P.O. MUNOZ, aided by P.O. FLOREZ, and P.O. CROSS, handcuffed Mr. DISISTO and transported him to the 34th Precinct Stationhouse.

28. P.O. MUNOZ then knowingly made a false official written statement regarding the incident to support a misdemeanor criminal complaint against Mr. DISISTO.

29. The statement falsely alleged that Mr. DISISTO did "lunge" at P.O. MUNOZ and Mr. DISISTO did "swing his right arm toward [P.O. MUNOZ's] face with a closed fist."

30. In fact, as corroborated by surveillance video of the incident, Mr. DISISTO was standing some distance away from P.O. MUNOZ, when P.O. MUNOZ lunged at Mr. DISISTO in order to prevent him from videotaping the officers.

31. The individual defendants then handcuffed Mr. DISISTO, upon information and belief, in retaliation for his First Amendment protected documentation of the event with a cell phone and raising his hands and arms to do the same.

32. P.O. FLOREZ and P.O. CROSS failed to intervene and / or were acting in concert with what was a clearly unconstitutional arrest of Mr. DISISTO.

33. Mr. DISISTO spent approximately 24 hours in the defendants' custody as a result of his arrest.

34. The charges against Ms. DISISTO were dismissed and sealed on July 11, 2014 on the prosecutor's motion because they could not prove their case beyond a reasonable doubt.

35. As a result of his handcuffing and arrest, Ms. DISISTO was deprived of his liberty, experienced pain, suffering, mental anguish, and humiliation.

**FIRST CLAIM**
**DEPRIVATION OF RIGHTS**
**UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983**
**(Against the individual defendants)**

36. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

37. By the individual defendants' conduct and actions in falsely arresting plaintiff, arresting plaintiff in retaliation for protected activity and the prior restraint of the same, fabricating evidence against plaintiff, maliciously prosecuting, destroying evidence, taking property, abusing the criminal process, and by failing to intercede to prevent the complained of conduct, defendants acting under color of law and without lawful justification, intentionally, and/or with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its First, Fourth, and Fourteenth Amendments.

38. As a result of the foregoing, plaintiff was deprived of liberty, suffered emotional distress, humiliation, loss of property, costs and expenses, and was otherwise damaged and injured.

**SECOND CLAIM**
**_MONELL_ CLAIM AGAINST DEFENDANT CITY THROUGH 42 U.S.C. § 1983**
**(Against the City of New York)**

39. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

40. The individual defendants' acts and omissions described above were carried out pursuant to the CITY's overlapping customs and practices which were in existence on March 12, 2014 and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the CITY and its agency, the NYPD.

6

41. The acts complained of were carried out by the individual defendants in their capacities as police officials pursuant to customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

42. The aforementioned custom and practice of the CITY and the NYPD include, but are not limited to making retaliatory arrests against persons who lawfully photograph, document or record police activity.

43. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in below:

### **Journalists and Photographers**

    a.  **May 30, 2007 / Robert Carneval / Carneval v. City of New York, 08 CV 9993 (DAB)(AJP) (S.D.N.Y.)**
A Manhattan photographer, Robert Carneval, was arrested after filming NYPD officers in the East Village as they seized and loaded bikes, which had been locked to lampposts and parking meters, into a police van.  After the photographer began filming and discussing the removals with another man, a plainclothes officer asked him for identification. When the photographer stated he had the right to film, the officer led him to a police car, examined his ID, then arrested him. Colin Moynihan, *City Settles with Two Arrested After Police Confrontation*, The New York Times (March 31, 2010), http://cityroom.blogs.nytimes.com/2010/03/31/city-settles-with-pair-arrested-after-police-confrontation/.

    b.  **November 2011 / Karen Matthews, Seth Wenig, Matthew Lysiak, Patrick Hedlund, Paul Lomax and Julie Walker**
In November of 2011, at least six journalists were arrested while covering the raid and eviction of Occupy Wall Street protesters from Zuccotti Park. Thirteen news organizations in New York City lodged complaints about the treatment of journalists and the suppression of coverage of the event, and ten press clubs, unions, and other groups called for an investigation into the police conduct at issue. CBS New York / AP, *Several Journalists Among Those Arrested During Zuccotti Park* Raid, CBS New York (November 15, 2011) http://newyork.cbslocal.com/2011/11/15/officials-journalists-among-those-arrested-during-zuccotti-park-raid/; Brian Stelter, *News Organizations Complain About Treatment During Protests*, The New York Times: Media Decoder (November 21, 2011) http://mediadecoder.blogs.nytimes.com/2011/11/21/news-organizations-complain-about-treatment-during-protests/.

c. **November 15, 2011 / Timothy Fitzgerald / <u>Rodriguez v. Winski</u>, 12 CV 3389 (NRB) (S.D.N.Y.)**
On or about November 15, 2011, in Zucotti Park, a publicly accessible open space, several police officers grabbed Timothy Fitzgerald, a citizen reporter who was documenting protest activities and police response to same, pulled him to the ground and arrested him.

d. **August 4, 2012 / Robert Stolarik**
Photographer Robert Stolarik, who worked regularly for The New York Times for more than a decade, was charged with obstructing government administration and resisting arrest after taking photographs of a brewing street fight at McClellan Street and Sheridan Avenue in the Bronx. Mr. Stolarik was taking photographs of the arrest of a teenage girl about 10:30 p.m., when a police officer instructed him to stop doing so. Mr. Stolarik said he identified himself as a journalist for The New York Times and continued taking pictures. A second officer appeared, grabbed his camera and "slammed" it into his face, he said. The arresting officer was later indicted for falsifying statements surrounding Ms. Stolarik's arrest. Russ Buettner, *Officer Is Indicted on Charges of Lying About Photographer's Arrest,* The New York Times (Aug. 26, 2013), http://www.nytimes.com/2013/08/27/nyregion/officer-is-indicted-on-charges-of-lying-about-photographers-arrest.html.

e. **September 17, 2012 / Christopher Faraone / <u>Faraone v. City of New York et al</u>, 13 CV 09074 (TPG) (S.D.N.Y.)**
Christopher Faraone, a journalist, was photographing a public demonstration at One Chase Manhattan Plaza when NYPD officers tackled, battered and arrested him. One of the officers directed him to cease his reporting activities within New York City.

f. **September 15-17, 2012 / Julia Reinhart, Charles Meacham, and John Knefel**
Five photojournalists reporting on Occupy Wall Street protesters were arrested in course of their reporting. One photographer was arrested after attempting to take a picture of an officer giving a dispersal order on a sidewalk. Another was forced to the ground and detained, while another was shoved and blocked from taking a photo by a Lieutenant in the NYPD's Legal Bureau. Christopher Robbins, *NYPD's pattern of harassing, arresting journalists continues*, Gothamist (Sept. 19, 2012) http://gothamist.com/2012/09/19/nypds_harassment_of_journalists_con.php.

g. **December 12, 2011 & March 15, 2012 / Paul Sullivan, John Knefel and Justin Wedes / <u>Rodriguez v. Winski</u>, 12 CV 3389 (NRB) (S.D.N.Y.)**
On December 12, 2011, Paul Sullivan, John Knefel and Justin Wedes, citizen reporters who were documenting protest activities and police response to same at the Winter Garden, a publicly accessible open place, were grabbed, pulled to the ground and arrested without warning or probable cause by the NYPD. On March 15, 2012, Mr. Wedes was again threatened with arrest for the same legal activity.

h. **March 2012 / Unknown**
In March of 2012, a cameraman from WABC-TV was struck by an officer at crime

scene for unknown reasons. Carlos Miller, *NYPD Cop Assaults News Videographer At Crime Scene*, Photography Is Not A Crime (March 22, 2012) http://photographyisnotacrime.com/2012/03/22/nypd-cop-assaults-news-videographer-at-crime-scene/

i.   **November 27, 2012 / Angel Zayas / <u>Zayas v. Kelly</u>, 13 CV 08808 (JMF) (S.D.N.Y.)**
     On November 27, 2012, a freelance photographer, Angel Zayas, was arrested for photographing officers effect an unrelated arrest in Grand Central Terminal. Daniel Beekman, *Photographer trying to shoot stop and frisk sues NYC over police harassment*, New York Daily News (December 13, 2013) http://www.nydailynews.com/news/justice-story/photog-shooting-frisking-sues-nyc-harassment-article-1.1546548

j.   **January 16, 2013 / Shimon Gifter**
     A photographer from VIN News, a media outlet for the Orthodox Jewish community, had his camera seized and thrown to the ground, his memory card erased, and his Blackberry damaged after photographing officers stopping and frisking several young men. The photographer was also handcuffed and held up against  a wall before being released with a warning. Boruch Shubert, *Police Brutality in Midwood?*, The Jewish Voice (January 24, 2013) http://jewishvoiceny.com/index.php?option=com_content&view=article&id=2978:police-brutality-in-midwood&catid=106:international&Itemid=289; Sandy Eller, *Charedi Photographer Claims Handcuffed By NYPD After Videotaping Flatbush Police Stop*, Voz Iz Neias? (January 20, 2013). http://www.vosizneias.com/122118/2013/01/20/brooklyn-ny-charedi-photographer-claims-handcuffed-by-nypd-after-videotaping-flatbush-police-stop/.

k.   **April 19, 2013 / Justin Thomas / <u>Thomas v. City of New York</u>, 13 CV 6139 (SJ) (LB) (E.D.N.Y.)**
     A film student was arrested filming the exterior of the 72nd Precinct on April 19, 2013. Officers confiscated the student's cell phone, camera, and the camera's memory card, as well as his friend's memory card from a camera.  Officers failed to remove the correct memory card from the friend's camera, however, leaving evidence of the encounter.

     <u>**Concerned Citizens**</u>

l.   **February 9, 2005 / Lumumba Bandele, Djibril Toure and David Floyd / <u>Bandele v. The City of New York</u>, 07 CV 3339 (MGC) (S.D.N.Y.)**
     Lumumba Bandele, Djibril Toure and David Floyd were arrested while videotaping two arrests in Bedford-Stuyvesant, Brooklyn, on February 9, 2005. "In trying to stop the police from violating the rights of others, they had their rights violated," said Kamau Franklin, a lawyer with the Center for Constitutional Rights. *Metro Briefing: New York; Manhattan: Lawsuit Against The Police*, The New York Times (April 27, 2007),

http://query.nytimes.com/gst/fullpage.html?res=9C02E2DD123EF934A15757C0A96
19C8B63.

m. **September 29, 2009 / Dennis Flores / <u>Mesa v. City of New York</u>, 09 CV 10464
(JPO) (S.D.N.Y.)**
On September 29, 2009, Dennis Flores was arrested when he photographed NYPD
officers using excessive force to disperse a crowd at a festival in the Bronx. At one
point prior to Flores' arrest, an NYPD officer stated it was "illegal to photograph
police."

n. **October 17, 2010 / Anibal Ortiz / <u>Ortiz v. City of New York</u>, 11 CV 7919 (JMF)
(S.D.N.Y.)**
On October 17, 2010, Anibal Ortiz was arrested after he began recording NYPD
officers, who asked him for identification, with a cell phone camera.

o. **July 11, 2011 / Caroline Stern and George Hess / <u>Stern v. City of New York</u>, 12
CV 04863 (SAS) (S.D.N.Y)**
On July 11, 2011, Caroline Stern was arrested and her boyfriend George Hess, was
tackled and arrested after he began video recording an encounter with officers in a
subway station. Kathianne Boniello, *Couple handcuffed, jailed for dancing on
subway platform: lawsuit*, The New York Post (July 8, 2012)
http://nypost.com/2012/07/08/couple-handcuffed-jailed-for -dancing-on-subway-
platform-lawsuit/

p. **April 27, 2012 / John Runnells / <u>Runnells v. City of New York</u>, 13 CV 2904
(KBF) (S.D.N.Y.)**
On April 27, 2012, John Runnells' camera was seized and its footage erased after he
video recorded a police traffic checkpoint. Mr. Runnells continued recording the
officers after his camera was returned, and he was subsequently arrested. Once again,
his camera was seized and the footage deleted.

q. **June 5, 2012 / Hadiyah Charles / <u>Charles v. City Of New York</u>, 12 CV 06180
(SLT) (SMG) (E.D.N.Y)**
On June 5, 2012 a woman was pushed and arrested for using her phone to video
record the stop-and-frisk of three unrelated young men on a public sidewalk. Rocco
Parascandola, *Woman suing NYPD for wrongful arrest discovers that a key piece of
evidence has mysteriously vanished from the Brooklyn stationhouse*, New York Daily
News (October 17, 2013) http://www.nydailynews.com/new-york/brooklyn/brooklyn-
precinct-log-book-mystery-article-1.1487721

r. **August 2012 / Unknown**
In August of 2012, a man was threatened with arrest for filming outside about 300
feet away from the security checkpoint at One Police Plaza. Carlos Miller, *NYPD Cop
Fails at Intimidating Man From Video Recording Police Headquarters*, Photography
Is Not A Crime (August 17, 2012)
http://photographyisnotacrime.com/2012/08/17/nypd-cop- fails-at-intimidating-man-

from-video- recording-police-headquarters/

s. **January 10, 2012 / Justin Sullivan / <u>Rodriguez v. Winski</u>, 12 CV 3389 (NRB)**
On January 10, 2012, Justin Sullivan was arrested for filming an Occupy Wall Street protest at Grand Central Terminal and his camera was confiscated. Later, Mr. Sullivan returned to the police precinct at the terminal to retrieve his camera and he was re-arrested. A witness reported an officer destroyed Mr. Sullivan's camera.

t. **March 2012 / Unknown**
In March of 2012, an individual video recording officers beating another man with batons was told to leave the scene and threatened with pepper spray.
Carlos Miller, *NYPD Takes Break From Beating Man To Threaten Videographer With Pepper Spray* (March 18, 2012)
http://photographyisnotacrime.com/2012/03/18/nypd-takes-break-from-beating-man-to-threaten-videographer-with-pepper-spray/.

u. **September 28, 2012 / Santos Bobet / <u>Bobet v. The City of New York</u>, 14 CV 1396 (WHP)(JLC) (S.D.N.Y)**
On September 28, 2012, at approximately 8:55 p.m., Santos Bobet observed someone being arrested near the Whitlock Avenue 6 Station in the Bronx. After beginning to videotape the arrest, he was arrested by Officer Kelvin Prado, who then along with his partner deleted the video footage.

v. **March 13, 2013 / Ed Garcia Conde**
Ed Carcia Conde was arrested on March 13, 2013 after he used his phone to video record a police officer's interaction with another man.  Ben Yakas, *Video: Bronx Man Hauled To Jail For Exercising Right To Videotape Cops*, Gothamist (March 16, 2013) http://gothamist.com/2013/03/16/video_bronx_man_hauled_to_jail_for.php.

w. **May 16, 2013 / Christina Gonzalez and Matthew Swaye**
Two Harlem residents were arrested after they filmed NYPD officers conduct stop-and-frisks at a car checkpoint. Christina Gonzalez and Matthew Swaye said they were returning from a Bronx mall at about 10:30 p.m. when they noticed several vehicles stopped and Gonzalez took out her camera to begin filming.   Jeff Mays, *'Professional Agitators' on NYPD 'Wanted' Flier Arrested After Filming Stop*, DNA Info (May 21, 2013), http://www.dnainfo.com/new-york/20130521/central-harlem/professional-agitators-on-nypd-wanted-flier-arrested-after-filming-stop.

x. **August 26, 2013 /  Jonathan Harris**
NYPD officers arrested a Bronx teenager, Jonathan Harris, after he was filming the officers attack and threaten two young girls in a Bronx park. The teenager told the officers to leave the girls alone and began filming them with his phone. The officers began chasing him, tackled him and punched him before arresting him. Jennifer Cunningham, *Teens say they were beaten by cops in Bronx park*, New York Daily News (Aug. 29, 2013), http://www.nydailynews.com/new-york/bronx/teens-mauled-cops-article-1.1440394#ixzz2eVh68jgw.

    y. **September 19, 2013 / Sean Basinski / <u>Basinski v. The City of New York</u>, 14 CV 1057 (LTS) (S.D.N.Y.)**
On September 19, 2013, a lawyer, Sean Basinski was arrested while using a phone to records police during a rally in front of Midtown North Precinct police station on West 54th Street. Colin Moynihan, *Street Vendors Protest Treatment by Police*, The New York Times (October 2, 2013), http://www.nytimes.com/2013/10/03/nyregion/street-vendors-protest-treatment-by-police.html?_r=0.

    z. **June 5, 2013 / Rahul Saksena / <u>Seksena v. The City of New York</u>, 14 CV 5129 (JBW) (LB) (E.D.N.Y.)**
On June 5, 2014, at approximately 10:00 p.m., Mr. Saksena was arrested in retaliation for filming a civilian police interaction in the Bushwick section of Brooklyn.

    aa. **September 25, 2013 / Debra Goodman / <u>Goodman v. The City of New York</u>, 14 CV 5261 (CM) (S.D.N.Y)**
Debra Goodman was arrested by two NYPD officer for using her cellphone to videotape an interaction between the officers and a homeless woman.

44. All of the foregoing acts by defendants deprived the plaintiff of federally protected rights, including, but limited to, the constitutional rights enumerated in paragraph 37.

45. Defendant CITY knew or should have known that the acts alleged herein would deprive the plaintiff of his rights, in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution.

46. Defendant CITY is directly liable and responsible for the acts of the individual police defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulation of the CITY and NYPD, and to require compliance with the Constitution and laws of the United States.

47. Despite knowledge of such unlawful *de facto* policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the CITY, including Commissioner William Bratton and former-Commissioner Raymond Kelly, have not taken

steps to terminate these policies, practices and/or customs, do not and did not discipline individuals who engage(d) in such polices, practices and/or customs, or otherwise properly train(ed) police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction(ed) and ratify / ratified these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

48. The aforementioned CITY policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned CITY policies, practices and/or customs, the individual defendants felt empowered to arrest plaintiff without probable cause and then fabricate and swear to a false story to cover up their blatant violations of plaintiff's constitutional rights. Pursuant to the aforementioned CITY policies, practices and/or customs, defendants failed to intervene in or report other defendants' violation of plaintiff's rights or subsequent perjury.

49. Plaintiff's injuries were a direct and proximate result of the defendant CITY and the NYPD's wrongful *de facto* policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant CITY and the NYPD to properly supervise, train and discipline their police officers.

50. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and were directly responsible for the violation of the plaintiff's constitutional rights.

**THIRD CLAIM FOR RELIEF**
**FALSE ARREST AND FALSE IMPRISONMENT**
**UNDER THE LAWS OF THE STATE OF NEW YORK**
(*Against all defendants*)

51. Mr. DISISTO incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

52. By the actions described above, individual defendants caused to be falsely arrested or falsely arrested Mr. DISISTO, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so. The acts and conduct of the individual defendants were the direct and proximate cause of injury and damage to Mr. DISISTO and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

53. The conduct of the individual defendants alleged herein occurred while they were on duty, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to Mr. DISISTO pursuant to the state common law doctrine of *respondeat superior*.

54. As a result of the foregoing, Mr. DISISTO was deprived of his liberty and property, suffered emotional distress, humiliation, and was otherwise damaged and injured.

**FOURTH CLAIM FOR RELIEF**
**ASSAULT AND BATTERY**
**UNDER THE LAWS OF THE STATE OF NEW YORK**
(*Against all defendants*)

55. Mr. DISISTO incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

56. By the actions described above (namely, forwarding false information to other police officers, resulting in the custodial arrest of Mr. DISISTO), the individual defendants did inflict assault and battery upon Mr. DISISTO. The acts and conduct of individual defendants were the direct and proximate cause of injury and damage to Mr. DISISTO and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

57. The conduct of the individual defendants alleged herein occurred while they were on duty, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to Mr. DISISTO pursuant to the state common law doctrine of *respondeat superior*.

58. As a result of the foregoing, Mr. DISISTO suffered emotional distress, humiliation, and was otherwise damaged and injured.

**FIFTH CLAIM FOR RELIEF**
**MALICIOUS PROSECUTION**
**UNDER THE LAWS OF THE STATE OF NEW YORK**
(*Against all defendants*)

59. Mr. DISISTO incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

60. By the actions described above (including but not limited to MUNOZ forwarding false information to fellow police officers and officials of the District Attorney's Office), the individual defendants caused a criminal proceeding to be initiated against Mr. DISISTO, even though there was no probable cause for an arrest or prosecution in this matter. The individual defendants maliciously caused this prosecution to be initiated in that they knew there was no probable cause for such prosecution and that they further wished to harm and

punish Mr. DISISTO for illegitimate reasons and to cover for the individual defendants' misdeeds. The criminal case against Mr. DISISTO was terminated in his favor in that all charges were dismissed.

61. The conduct of the individual defendants alleged herein occurred while they were on duty, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to Mr. DISISTO pursuant to the state common law doctrine of *respondeat superior*.

62. As a result of the foregoing, Mr. DISISTO was deprived of his liberty and property, suffered emotional distress, humiliation, and was otherwise damaged and injured.

**SIXTH CLAIM FOR RELIEF**
**ABUSE OF PROCESS**
**UNDER THE LAWS OF THE STATE OF NEW YORK**
(*Against all defendants*)

63. Mr. DISISTO incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

64. By the conduct and actions described above, the individual defendants caused regularly issued process to be issued against Mr. DISISTO compelling the performance or forbearance of prescribed acts, including but not limited to causing criminal process to issue. The purpose of activating the process was intent to harm Mr. DISISTO without economic or social excuse or justification, and the individual defendants were seeking a collateral advantage or corresponding detriment to Mr. DISISTO, including but not limited to covering for their own misdeeds by causing Mr. DISISTO to be charged with crimes, a goal which was outside the legitimate ends of the process. The acts and conduct of the individual defendants were the

direct and proximate cause of injury and damage to Mr. DISISTO and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

65. The conduct of the individual defendants alleged herein occurred while they were on duty, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to Mr. DISISTO pursuant to the state common law doctrine of *respondeat superior*.

66. As a result of the foregoing, Mr. DISISTO was deprived of his liberty and property, suffered emotional distress, humiliation, and was otherwise damaged and injured.

**SEVENTH CLAIM FOR RELIEF**
**CONVERSION / TRESPASS TO CHATTELS**
**UNDER THE LAWS OF THE STATE OF NEW YORK**
**(*Against all defendants*)**

67. Mr. DISISTO incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

68. By interfering with Mr. DISISTO's possessory interests at the time of his arrest and/or detention, and thereafter, and by intentionally and maliciously refusing to return such property to Mr. DISISTO despite his claim of right, the defendants have interfered, and are continuing to interfere, with Mr. DISISTO's property interest to Mr. DISISTO's exclusion.

69. The acts and conduct of the individual defendants were the direct and proximate cause of injury and damage to Mr. DISISTO and violated his statutory and common law rights as guaranteed by the Constitution and laws of New York. The defendants, therefore, are liable for conversion for properties destroyed from Mr. DISISTO which have not been returned to him in an unharmed condition.

70. As a result of the foregoing, Mr. DISISTO was deprived of his liberty and property, suffered emotional distress, humiliation, and was otherwise damaged and injured.

### EIGHT CLAIM FOR RELIEF
### NEGLIGENT HIRING, SCREENING, SUPERVISION, AND RETENTION
### UNDER THE LAWS OF THE STATE OF NEW YORK
### (Defendant the City of New York)

71.  Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

72. Defendant the City of New York negligently hired, screened, retained, supervised, and trained the individual defendants.

73. The acts and conduct of the individual defendants were the direct and proximate cause of injury and damage to the Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

[Intentionally blank]

## JURY DEMAND

74. Plaintiff demands a trial by jury in this action on each and every one of his damage claims.

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

a. That he be compensated for violation of his constitutional rights, pain, suffering, mental anguish, and humiliation; and

b. That he be awarded punitive damages against the individual defendants; and

c. That he be compensated for attorneys' fees and the costs and disbursements of this action; and

d. For such other further and different relief as to the Court may seem just and proper.

Dated:      September 24, 2015
            New York, New York

Respectfully submitted,

By:   _____
      David B. Rankin
      Gillian Cassell-Stiga
      Rankin & Taylor, PLLC
      *Attorneys for the Plaintiff*
      11 Park Place, Suite 914
      New York, New York 10007
      t: 212-226-4507